# 25-2095

# United States Court of Appeals

### for the

# Second Circuit

JAMES SEABROOK, on his own behalf and
on behalf of others similarly situated,

*Plaintiff-Appellant,*

– v. –

CITY OF NEW YORK, LYNELLE MAGINLEY-LIDDIE, LOUIS MOLINA,
VINCENT SCHIRALDI, CYNTHIA BRANN, RONALD BRERETON,
ANTHONY MONASTERO,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

ALICE G. REITER
ERIC J. HECKER
WANG HECKER LLP
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600

*Attorneys for Plaintiff-Appellant*

COUNSEL PRESS    (800) 4-APPEAL • (386079)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

JURISDICTIONAL STATEMENT ...................................................................1

QUESTIONS PRESENTED ...............................................................................1

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS...................................................................................6

PROCEDURAL HISTORY .............................................................................10

STANDARD OF REVIEW ..............................................................................11

SUMMARY OF ARGUMENT ........................................................................12

ARGUMENT ....................................................................................................13

I. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S
   EIGHTH AMENDMENT CLAIM AT THE PLEADING STAGE ...............13

   A. The Amended Complaint Adequately Alleges a Violation
      of the Eighth Amendment........................................................................13

   B. The Amended Complaint Adequately Alleges Municipal Liability.......13

   C. The Amended Complaint Adequately Alleges the Personal Liability
      of Defendant Monastero .........................................................................24

II. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S
    PROCEDURAL DUE PROCESS CLAIM AT THE PLEADING STAGE.....29

   A. The District Court Erred in Holding that No Liberty Interest Was
      Implicated ...............................................................................................30

   B. The District Court Erred in Holding at the Pleading Stage that the
      Process the City Afforded Was Adequate as a Matter of Law ..............32

CONCLUSION ....................................................................................38

CERTIFICATE OF COMPLIANCE PURSUANT TO
 FED. R. APP. P. 37(G)...............................................................39

# TABLE OF AUTHORITIES

## Cases

*Allaire Corp. v. Okumus*,
  433 F.3d 248 (2d Cir. 2006)................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007).............................................................11, 12

*Dudek v. Nassau Cnty. Sheriff's Dep't*,
  991 F. Supp. 2d 402 (E.D.N.Y. 2013) ........................................21, 22

*Foucha v. Louisiana*,
  504 U.S. 71 (1992).............................................................................30

*Francis v. Fiacco*,
  942 F.3d 126 (2d Cir. 2019)........................................................*passim*

*Gregg v Georgia*,
  428 U.S. 153 (1976)...........................................................................13

*Hurd v. Fredenburgh*,
  984 F.3d 1075 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021) ......................*passim*

*Juzumas v. Nassau Cnty.*,
  33 F.4th 681 (2d Cir. 2022) ......................................................22, 23

*Kilgore v. Kaufman*,
  374 Fed. App'x 89 (2d Cir. 2010)...............................................19, 25

*Kuck v. Danaher*,
  600 F.3d 159 (2d Cir. 2010)..............................................................36

*Ky. Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989)...........................................................................29

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)...................................................................... 32-33

*McKithen v. Brown*,
481 F.3d 89 (2d Cir. 2007)......................................................36

*Parham v. J.R.*,
442 U.S. 584 (1979)............................................................30

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007)..................................................11

*Rodriguez v. City of New York*,
623 F. Supp. 3d 225 (S.D.N.Y. 2022) ....................................13

*Skinner v. Switzer*,
562 U.S. 521 (2011)............................................................12

*Thomas v. Ashcroft*,
470 F.3d 491 (2d Cir. 2006)..................................................11

*Vaher v. Town of Orangetown*,
133 F. Supp. 3d 574 (S.D.N.Y. 2015) ..............................20, 21

*Vives v. City of New York*,
524 F.3d 346 (2d Cir. 2008)..................................................14

**Statutes**

N.Y. Corr. L. § 600-a ........................................................7, 16

N.Y. Crim. Proc. L. § 430.20 ...........................................15, 16

N.Y. Penal L. § 70.20 .............................................................16

N.Y. Penal L. § 70.30 ......................................................6, 9, 16

**Rules**

Fed. R. Civ. Proc. 12(b)(6).....................................................11

Plaintiff-Appellant James Seabrook ("Plaintiff") appeals from the Opinion and Order of the United States District Court for the Southern District of New York (Castel, D.J.), dated August 4, 2025 (the "Decision"), which granted Defendants' motion to dismiss the Amended Complaint. A74–A102.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a), and 1367. The Decision resolved all claims and is a final order. The Clerk entered judgment on August 5, 2025. A103. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1.      Whether the District Court erred in holding that Plaintiff failed adequately to allege that Defendants violated his Eighth Amendment right to be free from unlawful imprisonment.

2.      Whether the District Court erred in holding that Plaintiff failed adequately to allege that Defendants violated his Fourteenth Amendment right to procedural due process.

## PRELIMINARY STATEMENT

Plaintiff was sentenced to less time in prison than he already had served in the custody of the New York City Department of Correction ("DOC") prior to sentencing. Because state law entitled Plaintiff to credit for his time in DOC

custody, he already had served the entirety of his sentence and should have been released promptly.  DOC continued to imprison him for an additional seventeen days.  This case is about whether that was lawful.

The City of New York (the "City") has a policy and practice of continuing to imprison persons who have been sentenced to less time than they already served in DOC custody.  The City's policy and practice is that before such persons may be released, they first must be transferred to the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), a process that typically takes weeks.  That policy and practice is unconstitutional.  This Court squarely held in *Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021), that the detention of a person for even one day beyond his or her maximum sentence implicates the Eighth Amendment.

The District Court dismissed Plaintiff's Eighth Amendment claim against the City at the pleading stage, concluding as a matter of law that the City had no choice but to continue to detain Plaintiff for weeks after his maximum sentence date because (i) the relevant state statutes and (ii) the criminal court's sentencing order supposedly required the City to transfer Plaintiff to DOCCS.  Both of those conclusions were wrong.

No state statute says that when local corrections officials are aware that a prisoner has served the entirety of his sentence, he nevertheless must be transferred

2

to DOCCS custody before he can be released.  To be sure, in the typical case, a person who receives a sentence still owes more time than he served in local custody prior to sentencing, and there are state statutes that prescribe how that works:  DOC is responsible for tracking and calculating the person's time in custody prior to sentencing, DOC is responsible for providing that calculation to DOCCS to be credited against the sentence, and DOC is responsible for delivering the person to DOCCS custody.  But nothing in that statutory scheme requires that persons who already have served their entire sentences must continue to be over-detained until they are transferred from DOC to DOCCS – much less does it give DOC license to stand by idly for weeks while persons who already have served all of their time languish.  The District Court's application of the state statutes at issue cannot be reconciled with their plain language.

Nor did anything in Plaintiff's sentencing order require DOC to continue to over-detain him indefinitely past his maximum sentence date.  The sentencing court checked a box on the sentencing order form containing boilerplate directing DOC to "deliver" Plaintiff to DOCCS custody to be committed "until released in accordance with the law."  But that boilerplate plainly was intended for the typical scenario in which the person being sentenced still owes more state time, in which case DOC is required by the relevant state statutes to deliver the person to DOCCS custody.  Nothing in the sentencing order boilerplate required DOC to over-detain

3

Plaintiff.  To the contrary, the sentencing order required DOC to follow "the law," and neither the state statutes at issue nor the Eighth Amendment permitted his over-detention.

Crucially, it is undisputed that after imprisoning Plaintiff for seventeen days following his maximum sentence date, DOC belatedly released him *without ever transferring him to DOCCS custody*.  It was error for the District Court to conclude (especially as a matter of law at the pleading stage) that the relevant state statutes and the sentencing order both required DOC to transfer Plaintiff to DOCCS when it is undisputed that that never happened.

Plaintiff also asserts an Eighth Amendment claim against one individual, Defendant Monastero, who is DOC's senior custody management official.  Defendant Monastero was centrally involved in Plaintiff's over-detention.  The Amended Complaint alleges in reasonable detail that Defendant Monastero was aware that Plaintiff had served the entirety of his sentence and was deliberately indifferent to Plaintiff's rights.  The District Court nevertheless dismissed that claim at the pleading stage, holding as a matter of law that Defendant Monastero supposedly "could not do anything about" Plaintiff's over-detention, "was part of an effort inside DOC to rectify the problem," and "was willing to undertake an alternative course of action."  But this was a motion to dismiss.  The allegations in

4

the Amended Complaint do not remotely support those unsubstantiated, improper, and at best premature factual findings.

The District Court also erred in dismissing Plaintiff's procedural due process claim against the City. This Court has repeatedly held that over-detaining a person who already has served the entirety of his sentence implicates a liberty interest of the highest order. The City therefore must maintain a constitutionally adequate process for protecting against the deprivation of that liberty interest. Here, the City appears to have no meaningful process whatsoever for hastening the release of recently sentenced prisoners who are past their maximum sentence dates. The District Court nevertheless dismissed this claim at the pleading stage, holding that the "process" afforded to Plaintiff was constitutionally adequate as a matter of law. In doing so, the District Court relied on its erroneous reading of the state statutory scheme and the sentencing order, as well as wholly unsupported factual findings that are prohibited at the pleading stage.

The Decision should be reversed in part. Plaintiff's Eighth Amendment claims against the City and Defendant Monastero and Plaintiff's procedural due process claim against the City are well pled and should proceed to discovery.[1]

---

[1] Plaintiff accepts the District Court's dismissal of his claims against the individual Defendants other than Defendant Monastero, and Plaintiff accepts the District Court's dismissal of his Fourth Amendment and substantive due process claims.

## STATEMENT OF FACTS

Plaintiff James Seabrook was arrested in 2016 on several charges. A21, ¶¶ 67–68. In April 2019, he was convicted of Criminal Possession of a Weapon in the Third Degree, but the jury hung on the other counts. *Id.* ¶ 69. Plaintiff was re-tried on the hung charges in 2022, and the jury hung again. *Id*. ¶ 70. On December 13, 2023, following his third trial, Plaintiff was acquitted on all of the outstanding charges. *Id.* ¶ 71. Plaintiff was released from DOC custody immediately following his acquittal. *Id.* ¶ 72. At the time that he was released, Plaintiff had served more than seven and a half years in DOC custody. *Id*. ¶ 73.

After six weeks of freedom, Plaintiff returned to criminal court on January 31, 2024, where he was sentenced to three and a half to seven years for his 2019 conviction. *Id*. ¶ 74. At the time of his sentencing, Plaintiff already had spent more time in DOC custody than his maximum sentence. A21–A22, ¶¶ 74–75.

Section 70.30 of the New York Penal Law (which is entitled "Calculation of terms of imprisonment") addresses how to calculate a term of imprisonment. A16, ¶ 32. Subsection 70.30(1) first provides that a term of imprisonment generally "commences when the prisoner is received in an institution under the jurisdiction of" DOCCS. *Id*. ¶ 33. But where a person has already served time in jail prior to the commencement of the sentence as a result of the charge that culminated in the sentence, subsection 70.30(3) provides that the sentence term "shall be credited

6

with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence." A17, ¶ 37. Accordingly, when a person is sentenced to a maximum term of imprisonment that is less than the amount of time that he or she already has spent in custody, the person is entitled to be released. *Id*. ¶ 38.

Consistent with and reflecting the obvious importance of calculating prior time in custody promptly and accurately, Correction Law § 600-a requires DOC to maintain accurate records of pre-sentencing incarceration time. *Id.* ¶ 39. Section 600-a also requires DOC to deliver the certified time calculation of pre-sentencing incarceration time to DOCCS. Corr. L. § 600-a.

As discussed below, no state statute requires that a person in local custody who already has served more time than his maximum sentence be physically transferred to DOCCS before being released. *See infra* at 15–17. To the contrary, the relevant state statutes are silent about what local officials are supposed to do when they know that they are continuing to detain a person in custody past his maximum sentence date.

DOC continued to detain Plaintiff for seventeen days following his sentencing notwithstanding that he had already served more time than his maximum sentence. A22, ¶¶ 75–77. Because Plaintiff had served virtually all of his pre-sentencing time in DOC custody, A21, ¶ 73, DOC officials were well

aware that they were holding him past his maximum release date.  They also knew that DOC – not DOCCS – was in exclusive possession of the data confirming that Plaintiff was being over-detained.  A22, ¶ 79.

Throughout those seventeen days, Plaintiff and his criminal attorneys repeatedly complained to DOC about his unlawful over-detention, including by writing to multiple DOC officials.  A22, ¶¶ 80–81, 83.  Those complaints fell on deaf ears.

On or about the tenth day of Plaintiff's over-detention, a DOC official acknowledged that Plaintiff was past his maximum sentence date but stated that DOC nevertheless was continuing to detain Plaintiff because of the supposed need to "transfer [him] to state custody" before releasing him.  A22, ¶ 82.  Then, on the very last day of Plaintiff's seventeen-day over-detention, another DOC official wrote that DOC supposedly had been working to "expedite" Plaintiff's transfer to state custody "to no avail."  A23, ¶ 84.

Those statements are unsupported by the statutes, which do not require that an over-detained prisoner must be transferred to state custody before being released.  *See infra* at 15–17 (discussing Criminal Procedure Law § 430.30).  Moreover, because the District Court granted Defendants' motion to dismiss without permitting any discovery, there is no factual record regarding what, if

anything, DOC supposedly did during the seventeen days at issue to "expedite" Plaintiff's release.

The District Court also considered a letter from DOCCS to DOC (which Defendants appended to their motion to dismiss) stating that DOCCS had "no further interest in" Plaintiff because Plaintiff had "been discharged by Maximum Expiration of his sentence." A40. Curiously, however, this letter is dated January 16, 2024 – *before* Plaintiff's sentencing. Because this letter is dated before Plaintiff's over-detention began, it raises more questions than it provides answers about what, if anything, DOC officials did during the seventeen days that Plaintiff and his counsel were complaining that he was being held unlawfully in excess of his maximum sentence.

The cause of Plaintiff's over-detention was the City's policy and practice of continuing to detain individuals who already have spent more time in custody prior to sentencing than the maximum term of imprisonment, ostensibly because such persons must be transferred to DOCCS before they can be released. A18, ¶¶ 45–46. That policy and practice violates the United States Constitution, and it is not compelled by state law. Nothing in Penal Law § 70.30 (or any other state statute) says that only DOCCS may calculate a person's term of imprisonment. A19, ¶ 53. And nothing in Penal Law § 70.30 (or any other state statute) says that a person's term of imprisonment cannot be calculated until he or she physically arrives at a

DOCCS facility. *Id*. ¶ 54. Indeed, it is undisputed that Plaintiff was released from DOC custody without stepping foot in a DOCCS facility. A22, ¶ 77; A23, ¶ 86.

The criminal court's sentencing order likewise did not compel – or even authorize – Plaintiff's over-detention. The sentencing order merely committed Plaintiff "to the custody of the NYS Department of Correctional Services (NYDOCS) until released *in accordance with the law*." A37 (emphasis supplied). The sentencing order said nothing about detaining Plaintiff past the maximum seven-year term it had imposed, nor did it say that DOC was obligated to continue to imprison Plaintiff for longer than seven years if it took longer than that to transfer him to DOCCS. And, to repeat, DOC released Plaintiff without ever transferring him to DOCCS, and without ever seeking a modification of the sentencing order, laying bare that the sentencing order never required DOC to transfer Plaintiff to DOCCS in the first place.

## **PROCEDURAL HISTORY**

Plaintiff filed his initial Complaint on March 18, 2024 and his Amended Complaint on June 3, 2024. A4–A5. The Amended Complaint alleges that the City and DOC Captain Anthony Monastero, the head of DOC's Custody Management Unit, violated Plaintiff's Eighth Amendment and procedural due process rights by continuing to detain him for seventeen days beyond his maximum term of imprisonment. A10–A31.

10

Defendants moved to dismiss the Amended Complaint on October 18, 2024. A32–A33. On August 4, 2025, the District Court issued the Decision granting Defendants' motion. A74–A102. The Clerk entered judgment dismissing Plaintiff's claims on August 5, 2025. A103.

With respect to the claims at issue in this appeal, the District Court held that Plaintiff had not adequately alleged either municipal or personal Eighth Amendment liability, that he had no legally cognizable liberty interest in his freedom, and that the City's process for safeguarding any liberty interest was sufficient as a matter of law.

## STANDARD OF REVIEW

This Court reviews the decision of a district court granting a motion to dismiss *de novo*, "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "assess[] the legal sufficiency of a claim." *Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007). When deciding a Rule 12(b)(6) motion, a court must accept the factual allegations contained in the complaint as true and draw all inferences in favor of the plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint will survive a 12(b)(6) motion if it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

11

question is not whether the opposing party will ultimately prevail, "but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The Court should reverse the grant of Defendant's motion if Plaintiff has alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that substantiates his allegations. *Twombly*, 550 U.S. at 556.

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Plaintiff's Eighth Amendment claims against the City and Defendant Monastero at the pleading stage. It is undisputed that Plaintiff was over-detained for seventeen days past his maximum sentence date. The District Court misread and misapplied state law and the sentencing order in concluding erroneously that the City had no meaningful choice but to continue to detain Plaintiff until he could be transferred to DOCCS custody, which never even happened. The District Court made improper factual findings that are inconsistent with the allegations in the Amended Complaint in concluding that Defendant Monastero was not deliberately indifferent as a matter of law.

The District Court erred in dismissing Plaintiff's procedural due process claim against the City at the pleading stage. Plaintiff plainly had a liberty interest in his freedom from unlawful imprisonment after the expiration of his sentence,

12

and there is no record from which the District Court could validly conclude that the

City's process was constitutionally adequate as a matter of law.

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S EIGHTH AMENDMENT CLAIM AT THE PLEADING STAGE

### A.   The Amended Complaint Adequately Alleges a Violation of the Eighth Amendment

This Court has squarely held that the detention of a person for even one day

beyond his or her maximum sentence implicates the Eighth Amendment. *See Hurd*

*v. Fredenburgh*, 984 F.3d 1075, 1085 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021);

*see also Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 252 (S.D.N.Y. 2022).

That is because "[t]he Eighth Amendment prohibits 'the unnecessary and wanton

infliction of pain,' including punishments that are 'totally without penological

justification.'" *Hurd*, 984 F.3d at 1085 (quoting *Gregg v. Georgia*, 428 U.S. 153,

173 (1976)).

The District Court therefore correctly held that Plaintiff's seventeen-day

over-detention "qualifies as a harm of constitutional magnitude." A89 (quoting

*Hurd*, 984 F.3d at 1085).

### B.   The Amended Complaint Adequately Alleges Municipal Liability

Although there is no doubt that Plaintiff suffered a harm of constitutional

magnitude, the District Court nevertheless held that the City is insulated from

13

liability because the City supposedly had no "meaningful choice" under *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). A85. We agree with the District Court that *Vives* controls the analysis of the City's liability. We respectfully submit, however, that the District Court's application of *Vives* to these facts was deeply flawed.

The question in *Vives* was whether the City was liable to a plaintiff for arresting him for violating an unconstitutional state criminal statute. *See Vives*, 524 F.3d at 348. The City admitted in that case that it had a policy and practice of enforcing state criminal laws, but it contended that it could not be held liable for doing so, even where a state criminal law is unconstitutional. *Id.* at 350. This Court held that a municipality is liable for the violation of a plaintiff's constitutional rights, even if it was enforcing state law, where the municipality had a "meaningful choice" as to whether or how to enforce state law. *Id*. at 353–57.

The District Court held at the pleading stage that the City had no "meaningful choice" in continuing Plaintiff's over-detention as a matter of law. A85. The District Court concluded that certain state statutes and the criminal court's sentencing order both tied the City's hands such that it is not liable under *Vives*. That is wrong. Neither the statutes nor the sentencing order compelled the City to delay for seventeen days while holding the literal keys to Plaintiff's rightful freedom.

14

The District Court relied on several statutes: Criminal Procedure Law §§ 430.20(1), 430.20(2), and 430.30 and Penal Law § 70.20(1). A84–A86. None of those statutes required the City to over-detain Plaintiff in excess of his maximum sentence.

Criminal Procedure Law § 430.20(1) provides that "[w]hen a sentence of imprisonment is pronounced . . . the defendant must forthwith be committed to the custody of the appropriate public servant and detained until the sentence is complied with." Section 430.20(1) makes no reference to the City or any municipality, nor does it specify which entity is responsible for committing the defendant to custody. Moreover, section 430.20(1) states expressly that the commitment to custody must end when the sentence has been "complied with."

Criminal Procedure Law § 430.20(2) provides that when an indeterminate sentence has been imposed, "commitment must be to the custody of the state department of corrections and community supervision." Section 430.20(2) makes clear that a person sentenced to an indeterminate sentence should serve *the length of that sentence* in the custody of DOCCS, but it says nothing about *over-detaining* a person whose maximum sentence date has passed. Section 430.20(2) does not authorize, much less does it require, a municipality to continue to detain a person past his maximum sentence date.

15

Section 430.20(2) references Penal Law § 70.20(1)(a), which similarly provides that when an indeterminate sentence has been imposed, the person shall be committed "to the custody of the state department of corrections and community supervision for the term of his or her sentence and until released in accordance with the law." Nothing in section 70.20(1) requires the continued detention of a person who already has served more time than the maximum term of his or her sentence. To the contrary, *Hurd* made clear that such over-detention is *not* "in accordance with law."

Finally, Criminal Procedure Law § 430.30 provides that it is the duty of the City "to deliver the defendant forthwith to the proper institution in accordance with the commitment." Once again, nothing in section 430.30 says anything about delivering a person to DOCCS or anywhere else if that person already has served more time in City custody than his maximum sentence.

If anything, the statutory scheme at issue here suggests the opposite of the District Court's conclusion. Penal Law § 70.30(3) is clear that a sentence "shall be credited with and diminished by" the amount of time served in local custody. Correction Law § 600-a requires *the City* both to maintain the information necessary to perform that calculation and also to "deliver a certified transcript of such record" to DOCCS. And Criminal Procedure Law § 430.30 requires *the City* to deliver the inmate to DOCCS to serve out an imposed sentence. There is no

16

basis for the District Court's conclusion that the statutes left the City with no "meaningful choice" but to continue Plaintiff's detention indefinitely when it knew he had already served more than his maximum sentence. The statutes are silent as to what should happen when the City's time served calculation establishes that a person is past his maximum sentence date, and nothing in the statutes says that if a person has served the entirety of his sentence, he must first be transferred to state custody before he can be released.

Nor did the criminal court's sentencing order leave the City with no "meaningful choice" other than to violate Plaintiff's constitutional rights. That foundational assumption – which permeates the entirety of the District Court's analysis – is false. The sentencing order directed DOC to "deliver" Plaintiff to DOCCS custody to be committed "until released in accordance with the law." A37. That directive was an admonition to *follow* "the law," not a license to *violate* "the law." "The law" required the City to calculate Plaintiff's time served and to "deliver" him to DOCCS "forthwith." The sentencing order made no reference to holding Plaintiff beyond his maximum term, and it was error for the District Court to hold that the boilerplate in the order supposedly left the City with no meaningful choice other than to wait indefinitely for DOCCS to do something.

The best evidence that the City had a meaningful choice regarding whether to release Plaintiff – regardless of the statutory scheme, and regardless of the

sentencing order – is that the City did just that, albeit seventeen days too late. It is undisputed that the City released Plaintiff *without seeking an amended sentencing court order* and *without ever transferring him to DOCCS custody*. It obviously was error for the District Court to conclude that state law and/or the sentencing order left the City with no meaningful choice but to physically deliver Plaintiff to DOCCS when there is no dispute that such a transfer never actually happened.

In an effort to address this issue, the District Court stated in a footnote that "[i]t is of no moment that Plaintiff was ultimately released from the physical custody of DOC without being transferred to a [DOCCS] facility" because the sentencing order transferred "legal" – as opposed to physical – custody of Plaintiff to DOCCS, and DOCCS must have "authoriz[ed]" the City to release him. A85. This footnote is doubly problematic.

First, to the extent that Plaintiff was in the "legal" custody of DOCCS while in the physical custody of the City, then the District Court's false premise that state law and/or the sentencing order required a physical transfer to DOCCS falls of its own weight. After all, if Plaintiff was in the "legal" custody of DOCCS from the get-go, then whether the state statutes or the sentencing order required DOCCS to assume custody before releasing him cannot excuse his over-detention.

Second, the District Court's naked assumption ("the Court reasonably infers . . .") that DOCCS must have "authoriz[ed]" Plaintiff's release is a factual inference against Plaintiff that was prohibited at the pleading stage. A94; *see Kilgore v. Kaufman*, 374 Fed. App'x 89, 90–91 (2d Cir. 2010) (reversing dismissal of constitutional claims because district court relied on improper inference against plaintiff). No statute says that the City must continue to detain persons past their maximum sentence dates until DOCCS "authoriz[es]" their release, but even if such authorization were relevant, the manner in which and when DOCCS supposedly provided authorization would be crucial, and those facts must be developed in discovery.

The Amended Complaint alleges that during the seventeen days at issue, Plaintiff and his criminal attorneys repeatedly complained to DOC about his unlawful over-detention, including by writing to multiple DOC officials. A22–A23, ¶¶ 80–81, 83. But no record has been developed regarding what DOC did and did not do during those seventeen days because the District Court dismissed the case with no discovery. We know that on or about the tenth day of Plaintiff's over-detention, a DOC official acknowledged that Plaintiff was past his maximum sentence date but that DOC nevertheless was continuing to detain him because of the supposed need to "transfer [him] to state custody" before releasing him. A22, ¶ 82. And we know that on the very *last* day of Plaintiff's over-detention, another

DOC official wrote that DOC supposedly had been working to "expedite" Plaintiff's transfer to state custody. A23, ¶ 84. Especially given that (i) state law did not require any such transfer, (ii) any obligation to transfer was the obligation of DOC, not DOCCS, and (iii) no transfer to DOCCS was ever made, further factual development is necessary before this Court can conclude that the City had no meaningful choice in continuing to detain Plaintiff.

The District Court's reliance on *Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574 (S.D.N.Y. 2015), was misplaced. In *Vaher*, the plaintiff's claim was that police officials violated his right to procedural due process when they seized his ammunition in connection with his arrest and then did not return that property to him. In holding that the defendants had no meaningful choice, the court relied upon a criminal court order that directly, specifically, and unambiguously forbade the defendants from returning the plaintiff's property to him without the criminal court's blessing: "Defendants were ordered to seize and retain Plaintiff's property pursuant to New York Criminal Procedure Law . . . § 690.55(1)(b), which authorizes courts receiving property seized pursuant to a search warrant to '[d]irect that it be held in the custody' of the government agency that applied for or executed the warrant, 'upon condition that upon order of such court such property be returned thereto or delivered to another court.'" *Vaher*, 133 F. Supp. 3d at 606. The criminal court order at issue in *Vaher* expressly required the defendants "to

'retain custody' of Plaintiff's seized magazines and ammunition 'and hold the same in a safe and secure place until such time as the court, or another court of competent jurisdiction, should direct the disposition or delivery of said items.'" *Id.* (quotation omitted). In this case, nothing in the criminal court order contained any prohibition against releasing Plaintiff at the end of his sentence without criminal court approval, and to repeat, no such approval was ever received or even sought.

This case is much more like *Dudek v. Nassau County Sheriff's Department*, 991 F. Supp. 2d 402 (E.D.N.Y. 2013), in which the court rejected a municipality's claim that a court order left it with no "meaningful choice" under *Vives*. *Dudek* involved a state statute that authorized the family court to issue an order suspending a spouse's firearm license and confiscating any firearms he or she may have. In an apparent "glitch," however, the statute contained no language authorizing the family court to order the subsequent return of confiscated firearms. *Id.* at 405–06. A spouse who had his firearms confiscated pursuant to a court order made a demand on the Nassau County Sheriff's Department for the return of his rifle and shotgun, following the family court vacating the original confiscation order. *Id.* at 407. The sheriff's department refused to return the rifle and shotgun without a new court order requiring it. *Id.* at 407–08. The spouse then brought a § 1983 action against Nassau County, alleging "an unconstitutional policy of refusing to return a person's firearms, after the court order to confiscate those

firearms is no longer in place." *Id*. at 405. The County sought to dismiss the claim by relying on *Vives*, arguing that state law, not a separate municipal policy, required it to wait for a subsequent court order before returning the property. *Id*. at 410. The court rejected that argument because state law only withheld authority from the family court, not the sheriff's department. *See id*. at 411–12 ("This provision . . . deprives the Family Court of authority to direct [the firearms'] return, but leaves intact the authority of the department and the New York Supreme Court to do so."). The court held that because there was no need to obtain family court approval before returning the firearms, the plaintiff had adequately alleged that the sheriff's department did in fact make a "meaningful" and "conscious" choice to follow a policy of refusing return of the firearms absent a court order. *Id*.

The District Court's application of the *Vives* doctrine is inconsistent with this Court's analysis in *Juzumas v. Nassau County*, 33 F.4th 681 (2d Cir. 2022). In that case, the plaintiff challenged (i) a municipal policy requiring the surrender of long-arm weapons by a person whose pistol license had been revoked and (ii) a municipal policy conditioning future long-arm weapons possession on the reinstatement of that person's pistol license. *See id*. at 687, 689. Regarding the initial surrender, the statutory language in question expressly and unambiguously compelled the municipality to remove the plaintiff's long-arm weapons following

the revocation of his pistol license, and the Court held that the municipality thus had no meaningful choice in implementing the statute. *Id.* at 689–99. But the Court vacated the district court's rejection of municipal liability for the second policy and remanded for further factual development regarding the actual municipal policy in place and the extent to which the policy went beyond what was mandated by the statute's language. *Id.* at 692. This Court made clear that in the event that the municipality's policy of prohibiting ownership of long-arm weapons following revocation of an individual's pistol license went beyond the scope of the statutory mandate, such a policy *would* supply a basis under *Vives* for municipal liability for violating the plaintiff's rights. *Id*. The same analysis compels reversal of the Decision here.

In sum, the City had a meaningful choice regarding whether to deliver Plaintiff to DOCCS custody before releasing him. State law required the City, not DOCCS, to calculate his time served. State law required the City, not DOCCS, to facilitate any transfer. The sentencing order merely directed the City to follow the law and did not prohibit the City from releasing Plaintiff without permission from the sentencing court. And in the end, the City did exactly what it should have done from the outset: it released Plaintiff without ever delivering him to DOCCS, and without seeking permission from the sentencing court, contrary to the District Court's mistaken reading of the statutory scheme and the sentencing order.

At a bare minimum, the District Court's conclusion, at the pleading stage, that the City had no meaningful choice as a matter of law, based on the very limited record herein, was premature.

### C. The Amended Complaint Adequately Alleges the Personal Liability of Defendant Monastero

Whereas the City's liability for over-detaining Plaintiff turns on whether state law left it with no meaningful choice under *Vives*, the individual Defendants' liability turns on whether they were personally involved in and deliberately indifferent to the violation of Plaintiffs' rights. For purposes of this appeal, Plaintiff does not challenge the District Court's holding that the Amended Complaint did not sufficiently allege that the Commissioner Defendants were personally involved in and deliberately indifferent to the violation of Plaintiffs' rights. A87. But it is undeniable that the Amended Complaint adequately alleges that Defendant Monastero – DOC's most senior custody management official – was personally involved in Plaintiff's over-detention. Even the District Court agreed with that. A88.

The District Court nevertheless dismissed Plaintiff's Eighth Amendment claim against Defendant Monastero, concluding, supposedly based solely on the allegations in the Amended Complaint, that Defendant Monastero was not deliberately indifferent as a matter of law. A90–A92. That was error.

It is axiomatic that at the pleading stage, all reasonable inferences must be drawn in Plaintiff's favor. *See Kilgore*, 374 Fed. App'x at 90–91 (reversing dismissal of constitutional claims because district court relied on improper inference against plaintiff).

The Amended Complaint adequately alleges that Defendant Monastero was at the center of Plaintiff's over-detention, that he was aware that Plaintiff was languishing in jail in excess of his maximum sentence, and that he failed to take appropriate action. *See* A14–A15, ¶ 21 ("[Defendant Monastero] is extensively involved in all day-to-day DOC custody management practices, decisions, and actions."); A20, ¶ 58 (DOC "is the agency that possesses the information regarding the amount of time a person has spent in custody"); A22, ¶ 79 ("For all of those 17 days, DOC knew that Mr. Seabrook was being detained unconstitutionally in excess of his maximum sentence"); *id.* ¶ 80 ("Mr. Seabrook and his criminal defense lawyers notified numerous DOC officials of his unconstitutional detention"); A23, ¶¶ 84–85 (DOC Custody Management Unit, including specifically Defendant Monastero, had been aware of Plaintiff's situation for some unspecified period of time as of February 16, 2024); *id.* ¶ 86 (Plaintiff released from DOC custody on February 16, 2024); A26, ¶ 110, A27, ¶ 121, & A28, ¶ 136 (Defendant Monastero "knew of and disregarded the fact that Plaintiff was being

detained beyond his maximum sentence and [was] deliberately indifferent to the violation of his rights").

In holding otherwise, the District Court drew several improper inferences. First, it found as a matter of purported fact that Defendant Monastero supposedly "could not do anything about" Plaintiff's over-detention. A90–A91 (quoting *Hurd*, 984 F.3d at 1086). But the facts pled in the Amended Complaint show the opposite. Nothing in the statutes or sentencing order required Plaintiff to languish in jail for seventeen days after his maximum sentence date, and the Amended Complaint alleges that Defendant Monastero eventually *did* cause Plaintiff to be released, albeit belatedly, without ever transferring him to DOCCS or seeking a modification of the sentencing order.

By relying on *Hurd* for the proposition that Defendant Monastero supposedly "could not do anything about" Plaintiff's over-detention as a matter of law, the District Court stood *Hurd* on its head. *Hurd* held that *if* a jail official "could not do anything about [a plaintiff's] prolonged detention as a matter of law," then the official is not liable. 984 F.3d at 1086. That of course makes perfect sense. But in *Hurd*, the defendant was a *state* DOCCS official, and the court questioned the state official's ability to "do anything" precisely because Correction Law § 600-a "delegates the sole responsibility for certifying jail-time credit to NYCDOC, and the relevant information [therefore] would be contained

26

within NYCDOC records." *Id.* at 1086–87. Here, the Amended Complaint alleges that Defendant Monastero – a *City* official who *had* Plaintiff's jail time credit information – was aware at all relevant times that Plaintiff was being over-detained. That is the opposite of what was alleged in *Hurd*.[2]

Second, the District Court found as a matter of purported fact that Defendant Monastero "was part of an effort inside DOC to rectify the problem." A91. In so finding, the District Court relied on Paragraph 84 of the Amended Complaint, which quoted part of an email written by a different official stating generically, on the very last day of Plaintiff's over-detention, that DOC custody management officials supposedly had been "working to expedite" Plaintiff's release. A23, ¶ 84. It plainly was improper for the District Court to assume the truth of that statement. Even assuming that some efforts were made at some point, discovery is necessary to determine what efforts were made, by whom, and when. The District Court violated a bedrock rule of civil procedure when it "infer[red]" that Defendant Monastero must have been so involved in a supposed "attempt to hasten Seabrook's transfer," A91, that he is entitled to judgment as a matter of law at the pleading stage. That improper inference is all the more striking given the holding

---

[2] *Hurd* did not even reach the question of the state official's culpability because prior to *Hurd*, the Eighth Amendment right at issue here had not been clearly established, and the official therefore was entitled to qualified immunity no matter what she knew and no matter what she could have done. 984 F.3d at 1090.

in *Hurd* – which was expressly intended to provide notice to prison officials about their potential personal liability in future cases – that the detention of a person for even one day beyond his or her maximum sentence implicates the Eighth Amendment. 984 F.3d at 1085.

Third, the District Court found that Defendant Monastero "was willing to undertake an alternative course of action to Seabrook's delayed transfer so long as NYSDOCS gave its authorization." A91 (quotation omitted). It was improper, at the pleading stage, for the District Court to recite as a matter of purported fact what Defendant Monastero supposedly was "willing" to do. And even if one were to conclude that it was necessary to obtain authorization from DOCCS prior to releasing Plaintiff – though there is no statutory basis to conclude that such authorization was necessary, and the sentencing order said nothing about DOCCS authorization – the DOCCS "letter of no interest" that Defendants appended to their motion to dismiss was dated January 16, 2024, more than two weeks before Plaintiff's over-detention began. A40. Surely this Court cannot determine whether Defendant Monastero bears responsibility for continuing Plaintiff's over-detention without the development of a factual record showing what Defendant Monastero learned, when, and what he tried to do after he learned whatever he learned.

Finally, the District Court found as yet another matter of purported fact that Plaintiff's over-detention supposedly was the result of "processing or other

28

administrative delays concerning his transfer that are inherent to the exigencies of prison administration, not Monastero's deliberate indifference."  A92 (quotation and citation omitted).  No such allegations are pled in the Amended Complaint, and that factual finding is entirely unsupported by the limited record on this motion to dismiss.

## II. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM AT THE PLEADING STAGE

The Amended Complaint alleges that Plaintiff's over-detention violated his Fourteenth Amendment right to procedural due process.[3]  "Federal courts 'examine procedural due process questions in two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"  *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

The District Court held that Plaintiff failed adequately to allege either element.  A94–A95, A99.  Each holding is wrong.

---

[3]  The Amended Complaint uses the word "Defendants" when pleading the procedural due process claim.  We hereby clarify that the procedural due process claim is pled against the City only.

29

### A. The District Court Erred in Holding that No Liberty Interest Was Implicated

Plaintiff undoubtedly had "a liberty interest in being released upon the expiration of his maximum term of imprisonment." *Francis*, 942 F.3d at 142 (internal quotation marks and citation omitted); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (recognizing a "substantial liberty interest in not being confined unnecessarily"). Even the District Court acknowledged as much. A93.

The District Court nevertheless held that the City should be immunized from procedural due process scrutiny because the City did not "play[] any role in the state judge's decision to not order [Plaintiff's] release." A93–A94. But this case has nothing to do with any *judicial* decision about whether and when to release Plaintiff. State judges typically are not involved in the routine release of a prisoner upon the expiration of his sentence. To the contrary, it is incumbent upon *prison officials* to release prisoners when their terms of imprisonment end. Prison officials do not need a court order to release an over-detained prisoner. And to repeat, it is undisputed that DOC eventually released Plaintiff without seeking any modification of the sentencing order.

30

In concluding that the Amended Complaint failed adequately to allege the first prong of the procedural due process test, the District Court relied on *Francis v. Fiacco*, 942 F.3d 126 (2d Cir. 2019). That reliance was misplaced. *Francis* made clear that "a prisoner's liberty interest in freedom from detention implicates the Due Process Clause not only when a jury convicts him or when a court initially sentences him, but also when prison officials interpret and implement the sentence that the trial court has imposed." *Id*. at 142. *Francis* then went on to state that "[i]n the typical case, implementation of the prisoner's sentence follows straightforwardly from the sentencing court's commitment order." *Id*.

In *Francis*, all agreed that the sentencing court had unknowingly imposed a sentence that clearly violated a state statute prohibiting concurrent sentences under the circumstances present in that case, and the question was what the defendant prison officials were supposed to do given that it was impossible to implement the sentencing court's order without violating the statute. Here, in contrast, the sentencing order was straightforward: it imposed a maximum sentence of seven years and remanded Plaintiff to DOC custody to be transferred to DOCCS "in accordance with the law." Any questions about how to calculate Plaintiff's jail time credit, how to apply that credit to his sentence, whether he owed additional time, and whether and when to transfer him to DOCCS custody were entirely outside of the four corners of the sentencing court order.

31

Thus, unlike in *Francis* – in which the whole point was that the sentencing court order plainly violated a state statute and therefore could not be implemented as written – this case is much more akin to the "typical case" in which "implementation of the prisoner's sentence follows straightforwardly from the sentencing court's commitment order." *Id*. at 142. Nothing in *Francis* supports the District Court's curious conclusion that Plaintiff's over-detention did not implicate a liberty interest because the City supposedly was merely implementing the sentencing order.

To be sure, evaluating Plaintiff's procedural due process claim requires a second step: addressing whether the City's process for calculating Plaintiff's time served and interfacing with DOCCS was adequate to safeguard Plaintiff's liberty interest. But the District Court plainly erred in holding that the existence of routine boilerplate in a sentencing order derived from a template means that the City's undisputed over-detention of Plaintiff in excess of his maximum sentence did not even implicate a recognized liberty interest.

**B.      The District Court Erred in Holding at the Pleading Stage that the Process the City Afforded Was Adequate as a Matter of Law**

To assess the sufficiency of the process afforded to Plaintiff by the City, the Court must apply the three-factor analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), considering (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Francis*, 942 F.3d at 143. Here, the Amended Complaint adequately alleges that the City's procedures do not satisfy the *Mathews* test.

As the District Court found for purposes of the *Mathews* analysis, Plaintiff's allegations satisfy the first *Mathews* requirement because his private interest obviously was affected by his over-detention. A96. Indeed, his "interest in freedom from detention was an interest of the highest order." *Francis*, 942 F.3d at 142.

The District Court then held that Plaintiff's allegations do not satisfy the second *Mathews* prong because the City's role supposedly was "essentially ministerial," such that the risk of an erroneous deprivation was "virtually non-existent." A96–A97. That is wrong.

Far from "essentially ministerial," the City's role in implementing an individual's sentence is substantive, central, and essential. As discussed in Section I.B above, *see supra* at 13–29, it is *the City* – not the sentencing court, and not DOCCS – that holds the key to a sentenced person's cell following his or her sentencing. It is *the City* – not the sentencing court, and not DOCCS – that

calculates a sentenced individual's good time based on data that *it* maintains. It is *the City* that tells DOCCS how much time served must be credited against a sentence. And it is *the City* that delivers the prisoner to DOCCS in the event there is more time to serve on his sentence. There is no statutory basis for the District Court's erroneous conclusion that DOC's role was merely "ministerial." Not only was the risk of an erroneous deprivation not "virtually non-existent," the risk was extremely high.

Once again, the District Court's reliance on *Francis* with respect to the second *Mathews* requirement was misplaced. First of all, *Francis* characterized the role of the prison officials in that case as "essentially ministerial" in its analysis of the third *Mathews* prong, not the second. 942 F.3d at 144. Moreover, the Court found that the officials' "essentially ministerial" role was a reason to rule *for* the plaintiff, not against him. *Id*. The Court reasoned that because reading and implementing a sentencing order is a straightforward exercise, "the addition of extra levels of procedure" to protect against over-detentions would be "particularly feasible," and the "fiscal and administrative burdens" associated with more robust procedural protections "would be minimal." *Id*.

Far from supporting the District Court's conclusion with respect to the second *Mathews* factor, this Court's discussion of that factor in *Francis* strongly refutes the District Court's conclusion:

34

> [W]e conclude that the risk [of an erroneous deprivation] was unacceptably high. As this case demonstrates, New York has enacted a complex statutory scheme governing the imposition and implementation of criminal sentences. The sentence-calculation procedures on display here involved a coterie of non-lawyers interpreting that statutory scheme and then privileging their understanding of the law above the sentence pronounced by the sentencing court. Under these circumstances, the risk that Francis would be detained beyond his maximum term of imprisonment was unacceptably high.

*Id*. at 143.

In holding otherwise, the District Court relied on what happened at the sentencing hearing, concluding that Plaintiff's due process rights supposedly were satisfied by the "opportunity to be heard" before the sentencing court. A97–A98. But at the time Plaintiff was sentenced, DOC had not yet formally certified his time served, and there was no basis to think it would take DOC seventeen days to release him (once again, without ever transferring him to DOCCS). Once DOC took custody of Plaintiff following his sentencing, there was no further hearing before or review by the sentencing court. Plaintiff instead complained repeatedly to DOC that he was being over-detained in plain violation of his constitutional rights. Precisely because DOC had no adequate process in place to safeguard Plaintiff's liberty interest of the highest order, those repeated complaints fell on deaf ears, and he continued to languish in custody.

In addition to focusing wrongly on what happened at Plaintiff's sentencing, as opposed to what happened during the seventeen days after Plaintiff was

sentenced, the District Court also found, as yet another matter of purported fact, that officials "attempted to fix the problem within the bounds of their limited authority and did not oppose Seabrook's entitlement to release by NYSDOCS." A98. That conclusion is entirely unsupported by the facts alleged in the Amended Complaint and reflects an improper inference drawn against Plaintiff, which is forbidden at the pleading stage.

With regard to the third *Mathews* factor, the District Court made still another purported factual finding: "[T]he fiscal and administrative burdens that the government would sustain as a result of additional or substitute process through which an inmate in Seabrook's situation could challenge an alleged over-detention would be high." A98. There is simply no basis to draw that factual conclusion at the pleading stage. *See Kuck v. Danaher*, 600 F.3d 159, 166–67 (2d Cir. 2010) (reversing dismissal of due process claim because at the pleading stage, the plaintiff adequately alleged significant delay and no facts had been developed regarding the reason for such delay); *see also McKithen v. Brown*, 481 F.3d 89, 108 (2d Cir. 2007) (reversing dismissal on jurisdictional grounds and counseling trial court that the *Mathews* analysis is highly fact intensive, particularly with respect to alleged costs to the state).

The District Court's purported factual finding that the cost of additional process would be too high is not just incompatible with basic rules of civil

36

procedure. It also is irreconcilable with this Court's analysis of the third *Mathews* factor in *Francis*. As discussed above, *Francis* squarely held that where the liberty interest at stake is freedom, and where the context is "prison officials' implementation of an inmate's sentence," the "addition of extra levels of procedure" is "particularly feasible," and the "fiscal and administrative burdens" of a more robust process "would be minimal." 942 F.3d at 144–45.

The District Court also assumed baselessly that strengthening the process for safeguarding against the risk of excessive detention would require DOC to engage in "the re-litigation and second-guessing of many binding sentencing court directive[s.]" A99. That is not true. Although we are only at the pleading stage, it likely would be constitutionally sufficient for DOC to establish an appropriate channel for prisoners to report their over-detention and, when such a report is received, for DOC to engage in an appropriately expedited process for calculating the jail time credit (a calculation that DOC already is tasked with performing based on data that it is tasked with maintaining), and, if the individual is found to be past his maximum sentence date, to take appropriately expedited steps to release him. None of that would have anything to do with second-guessing, much less re-litigating, any sentencing order, nor would it in any way implicate the vast majority of sentenced individuals who still have time left to serve.

Whether any particular hypothetical process would be constitutionally sufficient is an analysis that may occur only after discovery and the development of a record from which a factfinder may determine what kind of process would be effective in safeguarding against the deprivation that Plaintiff suffered and the extent to which it would be taxing for the City to implement such a process. It was error for the District Court to conclude as a matter of law, at the pleading stage, that a process that has yet to be conjured would cost too much, especially where this Court's analysis in *Francis* is controlling and compels the opposite result.

## **CONCLUSION**

This Court should reverse the Decision in part and reinstate Plaintiff's Eighth Amendment claims against the City and Defendant Monastero and his procedural due process claim against the City.

Dated: October 14, 2025
New York, New York

By: /s/ Alice G. Reiter
Alice G. Reiter
Eric J. Hecker

WANG HECKER LLP
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600

*Attorneys for Plaintiff-Appellant James Seabrook*

**Certificate of Compliance Pursuant to Fed. R. App. P. 37(g)**

1.    This document complies with Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,736 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 14-point Times New Roman font.

  /s/ Alice G. Reiter

*Attorney for Plaintiff-Appellant James Seabrook*

Dated:  October 14, 2025
            New York, New York